The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Amy C. Lannard presiding. Good morning. The court is taking up case number 424-0725, Brent Alsman et al. v. Deanne College et al. And with that, Counsel for the Appellant, if you'll please state your name for the record. Good morning, Your Honor. Christopher Cox on behalf of the Appellant, Deanne College. Thank you. And Counsel for the Appellant, if you'll please state your respective appearances. Good morning. Patrick Boland, B-O-L-A-N-D, on behalf of the Co-Trustee Appellees. Your Honor, Elizabeth Megley, M-E-G-L-I, on behalf of Frances Owen, Andrea Byer, and Brent Alsman Appellees. Thank you. And Counsel for the Appellant, you may proceed with your argument. Thank you, Your Honor. May it please the Court. This appeal is brought by my client, Deanne College, from the April 1st, 2024 entry of an order granting summary judgment in favor of the Appellee Co-Trustees of the Richard V. Owen Marital Trust. That summary judgment order was entered, which granted a summary judgment in favor of the Appellees on a petition for instructions, which the Appellee Co-Trustees had filed for purposes of assessing what their rights, obligations, and duties were under the Richard V. Owen Marital Trust and the document, the Richard V. Owen Declaration of Trust, which is the control and trust instrument that created the Marital Trust. Central to this appeal, and I would say central to the underlying dispute, was the question of what happens and how should be the trustees to treat the specific, certain specific bequests that are provided for by the grantor in the Richard V. Owen Marital Trust, in the event that those assets were converted from one form to another or sold if necessary. Now, the Appellee Co-Trustees argued for a petition or position that would say that if such an asset subject to a Marital Trust specific bequest is sold, it becomes part, it's converted to a residuary bequest, which is then ultimately distributed to all beneficiaries, rather than remaining subject to that specific bequest. The position advocated for by my client, Mrs. College, is the opposite, that the specific bequests are taken, and the intent of the bequest is conveyed or altered in some form or fashion, the proceeds from that sale or conveyance remain subject to bequest. Circuit Court of McLean County disagreed with my client, which is why we're here today. Now, at a very high level, Your Honors, the Richard V. Owen Marital Trust provides for two conflicting intents and purposes. On the one hand, it provides for the benefit for income for the life of Frances M. Owen, who is the grantor of Richard V. Owen's wife and my client's mother. Now, the grantor's wife receives income from the Marital Trust pursuant to Section 4C of the trust instrument during her life, and that trust provision also allows and provides for her to, or for the trustees to invade the principle of the trust if they deem it necessary to provide for her health and well-being. Also provides, the trust also provides for her to be able to direct non-income producing property, be generated and converted into income producing property to allow herself to continue to generate income. Now, the language of that trust does specify that she can only direct the property to be converted. She can't specify how. In conflict with these interests is the fact that the grantor also provided in Section 4D of the trust for certain specific bequests to the beneficiaries, to his children, the children being my client, Deanne College, one of the co-trustees, Brent Alsman, and Andrea Beyer, my client's sister. Section 4D1 provides the my client receives certain real estate, and then if you go down to the end of that provision in Section 4D4, there's a basic kind of catch-all provision for a residuary bequest that provides that any assets, once these specific bequests are distributed, the residuary is then split up among the remaining beneficiaries equally after the death of Mrs. Owen. Our contention before this court is that the question of how the trustees are to treat an asset subject to a specific bequest in the event that they find it necessary to sell that asset for any reason is governed by this court's prior holding in the case of Ballman v. Pellman, 352 ILAB 3D 1203. In that case, the Fourth District Court reviewed a testamentary trust, which is substantially similar, if not identical, I would suggest to this court as what an operation in terms as how the marital trust operates. The Ballman testator provided for a testimony trust to provide for his wife for life, and then after that, the trust, upon her death, the trust was to be distributed to her children as gifts. The only caveat to that was the Ballman testator did provide for a specific bequest to her son, who was also the trustee of the Ballman trust. That specific gift was placed by the testator in the Ballman, what I'm going to call the Ballman testamentary trust, and the specific bequest was shares of stock in a corporation and a debt obligation. Debt obligation was subsequently liquidated by the trustee of the Ballman trust and turned into cash that was then used to provide for the benefit of the Ballman settler's wife. Time passed, Ballman settler's wife eventually passed away, and at the time of the death of the Ballman settler's wife, the initial cash contribution from this debt obligation, which was $255,000, had been whittled down. It was now only $245,000, so some of that money was used to spend on behalf of the settler. Following that, a few more distributions are made, and the trustee in Ballman delivered everything, the rest of it, to himself, which was about $235,000 at that point. This court, reviewing an objection by the sister of the Ballman trust, said that it was appropriate that those funds that were the liquidation, liquidated versions of the Ballman, of the debt obligations that were specifically bequested to him, it was appropriate that those funds go to the testator or go to the trustee pursuant to that specific bequest, and the reason for that was that this court examined the concept of a demption under Illinois law or divestiture and came to the conclusion that when an asset is provided, is specifically bequeathed to a party in a trust, and then that asset's not there, the fact that the asset is gone cannot be evidence of an intent by the testator, by the grantor of that trust, that the bequest be deemed, that the bequest be divested or otherwise nullified. The only person who can do that is the grantor himself by some expressed declaration of intent. The court specifically said in Ballman that if it's an action of the trustee that removes an asset, then we do not treat that asset as being a deemed. It was still the intent, essentially, of the grantor that that bequest remained full force in effect, and because of that, they looked at the Ballman, the situation in Ballman, and this court said, well, okay, the technical form of your bequest was this debt obligation and some shares of a company. If the company went under, so those shares are gone, but the debt obligation was converted from a pure obligation into liquid cash. It was then converted again into a combination of cash, stocks, and bonds, and it was whittled down. It was essentially spent down, at least in part, for the benefit of the settler's wife, so that the amount that was left at the time the settler's death, or at the time the settler's wife's death, was less than the full amount of the obligation. Despite that, this court said, okay, the trustee converted that specific bequest from one form to another, but that conversion cannot result in the defeat of the specific bequest. Therefore, the remainder of that account, the $235,000 that was left in Ballman, still belonged and properly went to the trustee pursuant to that bequest. But Counselor, aren't there distinctions between the two trusts in Ballman and the trust here? No, Your Honor. In Ballman, there were no specific bequests, or excuse me, there are no specific terms limiting what could be done with that. Isn't that true? Well, the opinion doesn't speak to it, Your Honor, but inherently, there aren't, I would suggest that there isn't, because the fact, the setup of the Ballman Trust provided for, if I'm understanding your question correctly, provided for those assets to be used during the life of the settler's wife, necessarily, and they were spent down. Now, in this case- There were no other conditions precedent outlined in the Ballman Trust, just for the use and benefit of the wife during her lifetime. That would be correct, Your Honor. Now, in this case, but in this specific case, if you turn to this trust, there are no conditions precedent that would defeat that specific bequest in the language of this trust either. Now, the appellees in their position would cite to the language of Section 4D, which says, if the trust, upon the death of the grantor's wife, or the grantor, if the grantor's wife does not survive the grantor, the trustee shall distribute to the extent that such property, the trust includes such assets to the trustee. That's the only, that's the condition, and the condition, the other condition referenced there would be simply that the specific, the people receiving a specific bequest have to survive, or survive the grantor. But once that happens, there are no limits on, no action by the trustee, just the same way in Ballman, no action by the trustee here could impair that specific bequest. Like in Ballman, in this case, whatever trust assets have been placed in the marital trust at this time, they exist. And certainly, if the trustees feel compelled, if they believe it is necessary, pursuant to their fiduciary duty, to convert those assets, either by the direction of the, of Ms. Owen in this case, or by virtue of the fact that they just feel compelled to do so, that conversion is still a change being made by a trustee of an asset already in existence within, and by the intent of the grantor. This court's holding in Ballman is a trustee cannot take an action that negates that bequest. The same would be true here. The trustees can certainly convert an asset that would specifically bequeath to any beneficiary, and they may even be obligated to spend some of that principal down, pursuant to their powers under Section 4C. But at the end of the day, whatever is left over for the trustees remains an asset in existence, merely converted into a different form. And whatever is left of that asset, whether it be a million dollars of cash, if a building bequeathed to my client, or bequeathed to one of the other beneficiaries, has changed. Okay, now it's converted from one form to another, but the asset remains, and the economic value of that remains. And if the trustees, even if they have to spend down, it does not defeat the language of the specific bequest, and the intent of the grantor to provide that specific bequest. There isn't any language, when you view this trust as a whole, that would do that. Looking at it from the other side, if the, I'm sorry, Your Honor, did you have a question? No, go ahead. If you look at it from the other side, position advanced by the appellee, co-trustees, and the beneficiary, other beneficiaries, would result in a situation where the co-trustees could negate or nullify the specific bequest in their entirety, simply by selling an asset, not distributing any of the principal. In other words, they just invest the principal, it's all still there, but they have, in the process, completely defeated the specific bequest. They've effectively turned a specific bequest, given by the pure intent and the clear intent of the grantor, into a contingent residuary bequest that now goes to all beneficiaries. There isn't any support for that authority in this document. The language that the trustee, or the co-trustee appellee cites, even if the beneficiaries do to the extent they're most significantly, the notion that the trustee shall, to the extent the trust property includes such assets, in light of this court's clear holding in Bowman, can only be interpreted to mean that if, yes, the trustees, the marital trust may convert property, they may sell property as they see fit to provide for Frances Owen during her life, but in the event that action is taken, all they are doing is converting property, and just like this court held in Bowman, that the conversion of a debt obligation into another form, and then the actual spending down of that obligation, did not negate the fact that the residue of that request was a specific, was still specifically bequested, queefed, I should say, and still enforceable, the same is true here. The trustees can sell an asset, and if they sell an asset, if they convey an asset, if they convert an asset into a different form, the proceeds of that conversion, of that sale, remain subject to the specific bequest, and the only reason why they would not be present is if the co-trustees, in their discretion, believed it necessary to distribute some portion of that principal to the other, to Mrs. Owen for her health and benefit during her life. But what about the language in Section 4 that says that the trustee shall divide and distribute the property that remains? So, if the property, a specific bequest, is sold, it no longer remains. What about that language? Well, I would suggest to Your Honor, that that language is addressed by Bowman as well, because the same conditions were found in the Bowman Court. We're stuck with the language of the trust, not just interpreting it through some other case. What's the language of the trust have to do with this? If you take in conjunction with what Justice Zershow just asked, the language, in addition, the trustees may pay such portions of the trust corpus of the marital trust if needed, as the trustees shall deem necessary and appropriate in the exercise of the trustee's discretion for the health, support, medical care, and maintenance of the grantor's wife. When you put those together, doesn't that mean that, if necessary, they could dissipate the entire trust, if needed, for the grantor's wife? It does, Your Honor, and I don't disagree with that position. If that's true, then, obviously, the grantor has made provision for the possibility that these specific bequests may not survive. That's true. That is true, Your Honor, but I don't think it defeats, where I think I respectfully disagree with the argument, is that, while the grantor has made provision for the possibility that these identified, that those assets need to be distributed for the benefit of Miss Owen during her life. Otherwise, if you don't distribute those assets, then they still exist in the trust, within the meaning of this trust, and are still subject to the specific bequest. That is analogous, again, to the Bowman case, where you had a situation where there's a Bowman did, in an identical situation, Bowman did not, in this court in Bowman, did not read that provision to say, well, the specific bequest no longer exists, so now the remaining proceeds are treated as part of the residuary bequest to the beneficiaries. Bowman went exactly the opposite and said, while the form of the specific bequest has changed, this court held it is still subject to the specific bequest. So, to answer Your Honor's prior opinion, Justice Grishow, is that, yes, the specific bequest could be changed, but this court has previously held in Bowman that changing the proceeds, changing it from one form to another, from proceeds, from a physical asset, a building, for example, into proceeds, doesn't put that asset into the residuary. The asset still exists, separate and apart, it just exists as cash proceeds now, as opposed to a structure. Because, again, the same... If I may, if I may, let's break it down just a little bit. She has the right to income. So, if you have real estate, for example, that's being leased, it's producing an income, she would have the right to the income, agreed? Agreed. If it's not being leased and it's producing no income, then she has a right to request that it be converted to an income producing. The question becomes, I guess, first, is that the equivalent of the right to sale, meaning at her direction only? So, that question would say, no, Your Honor, if you give... But the trustees then would have the option to sell based on their authority contained within the trust. They have the right to sell. If they sell one of these items subject to the specific bequest, as I take it from your argument in Bowman, if we sell the property, it would then, like the asset in Bowman, which was put in the Merrill Lynch account, would need to go in a special account, still part of the marital trust though, that if that account is producing income, she gets only the income? Or are you suggesting that once we change the form, it's no longer in the marital trust? It remains in the marital trust, still producing income. Okay. So, let me stop you there. And if it's not... So, they could put that in a cash account, producing income. And then if the trustees make a determination that for her health support, medical care, or maintenance, that they want to invade that, I'll say, tracing account, segregated account, however you want to phrase that, then they could ultimately use the entire amount for her support. But if they don't make the determination that it's a need for her health support, medical care, or maintenance, it will remain contained within the marital trust, but is separate for identification and tracing purposes to that prior specific request. Is that your interpretation of the trust? That is, Your Honor. All right. You'll have time in rebuttal. And with that, Mr... Or actually, before that, Justice Grishow or Justice DeArmond, did you have any follow-up questions at this time? Yeah. Mr. Boland, I believe you were going to argue for the first 14 minutes. Is that correct? That's correct, Your Honor. All right. You may proceed with your argument. May it please the court. Patrick Boland on behalf of the Appaloose co-trustees. The North Star, in any case involving trust interpretation, is determining the settlor's intention by looking at the plain language of the trust, a task that I sponsor Ms. College and my opponent, Mr. Cox, have failed to do. A settlor's intention is determined by the unambiguous language of the trust document that he settled. The specific language of that trust should be given its plain and ordinary meaning, and it should be given effect. There is no reason to stray from that language unless there is an ambiguity identified, and my opponent has not identified any ambiguity. That is a term with potentially two meanings. Here, there's only one meaning applicable to the trust provisions in front of this court. Instead, my opponent sponsors straying from the trust language by noting that his client has a different interest in the trust as compared to her mother, Mrs. Owen. That differing interest does not change the language of the trust, and in fact, trustees under the Hilvers-Brinkman case are allowed to put trustees in potentially conflicting positions who then are obligated to follow the express language of the trust agreement because the goal is not to appease every person's interest but to give effect to the start of our inquiry looking at the specific language of the trust, and that specific language of the trust responds to each of Mr. Cox's arguments and in and of itself explains why Bowman is distinguishable. First, the settlor, before funding the marital trust, gave specific bequests under Section 4A to Mr. Cox's client. In doing so, the settlor showed that if he wanted to make specific bequests not subject to any conditions that were presented by application of the marital trust, he could have done so by making those gifts prior to funding the marital trust. Next, we look at Section 4C of the marital trust and its express language. Section 4C requires the trustee to administer and distribute the marital trust as provided in this section and requires the trustees during the lifetime of Mrs. Owen to provide for her health, support, medical care, and maintenance, and they do that in two different ways. One, Ms. Owen has an unfettered right to the income produced by the assets of the marital trust, and two, if necessary, they may invade the principal by selling, leasing, mortgaging, converting, at Mrs. Owen's direction, any non-income producing asset. Let me stop you there, counsel. I want to clarify something you just said. You said at her direction. So, my question to you is, does she, without any consideration of the trustee, have the authority to direct the sale of property? Mrs. Owen, her authority is limited to directing the trustees to make non-income producing assets productive. It is then the trustees. I misspoke. That's my fault. That's fine. I want to clarify that because at the trial court level in this case, the court did not spend much time talking about the underlying facts of the actual distribution, if you will, the sale of that property, and there was a suggestion, perhaps there were other cases pending, and that this was focusing merely on instructions and the interpretation of the trust itself. Am I accurate in that summary, if you will? You're accurate in that summary. There are assets of the marital trust that have been sold, and the court, I agree below, did not necessarily discuss specifically the details of any one of those sales, whether or not they were necessary, whether or not they were at Ms. Owen's direction. So, if this court reviews that de novo, I guess my question is, if this is a de novo standard of review, does this court have an obligation, given that group exhibit B and A are attached as far as the request by Mrs. Owen's to review those specific sales? I think that's a different case, Your Honor. While I agree this is de novo review, the case of whether or not the trustees acted properly in selling assets or acted properly in following Ms. Owen's direction is a factual determination, fact-specific to the condition of each property and the needs of Mrs. Owen. Those facts aren't at issue here. Those are pending in a different case? Mr. Cox, on behalf of his client, filed an action alleging that the trustees breached their fiduciary duty in the relation to the sale of the Faribault property referenced in Section 4D1 of this trust. Thank you. And specifically, the trial court addressed that by saying that case can continue on, notwithstanding the ruling on what's at issue today of how you apply these terms. The trustees still have their fiduciary obligations, and whether or not those are met in any specific sale can be tested by Mr. Cox and his client. With regards to the property here, we'll say the hypothetical property that is contained within the marital trust, she has the right to the income, you've agreed upon that. If she makes the request that that be converted and the trustees, not just because of her request, but ultimately decide that that's necessary for her health, maintenance, and care, if they sell that property, then is she simply entitled to the proceeds entirely from the sale of that? Because normally that would be deemed what we would think of principal under the Principal and Income Act. She's only entitled to the income, if you will. Are you suggesting that all of that goes back into the marital trust? How do you distinguish that once that property is sold as to the difference between the income beneficiary's rights and the remainderment's rights? Well, respectfully, I don't believe we're at that point yet, Your Honor, to have to make that determination. But in the event the real property is sold, that is then part of the principal, which may in and of itself generate income to which I believe Mrs. Owen would be entitled to. And again, the trustees could apply that principal thereafter for her benefit as is necessary. And I think that's a crucial flaw in Mr. Cox's argument because any restriction upon the trustee's rights to deal with marital trust property for the benefit of Mrs. Owen places restrictions on the trustees that the settler did not place upon them himself. And it is incumbent upon them, in fact, to deal with Mrs. Owen and her care and maintenance with a primacy, as suggested by the language of this trust agreement. And isn't that partially because of the deductions and the requests that were made under the Internal Revenue Code provisions? Yes. And in fact, and Ms. Megley is specifically going to address some of the tax implications here, which don't appear to be President Bowman, but the marital trust is a Q-tip trust where Ms. Owen needs to have authority over this property or else the entire trust scheme from a tax perspective would fail. But I will defer on that portion of the argument to Ms. Megley. The other language is... In Council, we're actually, I'm sorry, I know I've made inquiry. We are at that six-minute mark. I will pass to Ms. Megley then. Thank you. Council, you may proceed with your argument. May it please the Court. Again, my name is Elizabeth Megley. I represent the appellees Francis Owen, who is the surviving spouse and primary income beneficiary at this time, as well as Brent Olsman and Andrea Beyer, who individually and as beneficiaries of the residuary, including certain specific bequests that are made to them under the document. With respect to the tax issue, an important distinction between this particular property or this particular trust and the Bowman Trust, this is a Q-tip marital trust. It was created for tax reasons to allow the estate of Mr. Owen to avoid paying a state tax on the assets that were passing for the primary benefit of his surviving spouse. Q-tip trusts have specific requirements which include the ability for the surviving spouse to direct that non-income producing or property that is not producing sufficient income be made productive. It also includes a provision which, to the extent that the assets in the marital trust increase the value of the surviving spouse's estate, resulting in an estate tax obligation, the assets of the Q-tip marital trust are available and directed to be used to pay that portion of the estate tax attributable to the assets within the marital trust. This is distinguishable. In Bowman, the assets of the estate were not sufficient to require tax consideration. Any suggestion that they are similar in that respect is simply inaccurate. In this particular case, the trust not only could the assets be utilized to provide for the health, support, medical care, and maintenance of my client, Mrs. Owen, but they could also be used to pay the estate tax obligation associated with those assets at the time of her passing. As a result, there is a scenario where all or a large portion of the assets that are subject to specific bequests as a residuary no longer exist. I think in this particular case, one of the issues that has been missed or maybe just not directly dealt with by Mrs. College is that the language of the trust is specific. If the assets exist at the time of her passing, then they are subject to specific bequests, but only in the event that the specific beneficiaries are still living. If they are not living, it does not pass to their issue or descendants. It becomes part of the residuary and passes equally among the descendants of the decedent. It is important that no court, in any case where it is a trust construction case, apply terms that don't exist or ignore terms that exist. In this case, it is clear not only by the language of the marital trust, which anticipated that assets could be terminated or eliminated to provide for Mrs. Owen, but also with respect to the specific language in that upon the death of Mrs. Owen, that the testator, the settlor in this case, specifically acknowledged and anticipated that assets may not be available for the specific beneficiaries after the death of Mrs. Owen. Additionally, there has been a suggestion that there is no harm to Mrs. Owen in the proposed approach suggested by Mrs. College through her attorney, Mr. Cox. However, the suggestion that this asset should be specifically held in a separate account may negatively impact my client, Mrs. Owen, as it would impact the trustee's ability to maximize the return on investment by increasing the total value of the estate to increase total income available for distribution to my client. The obligation is to provide to maximize income for the surviving spouse. Putting that in a separate account may significantly impact the co-trustee's ability to do so, thus reducing income payable to my client. Additionally, there has been a... If I may, just so I'm clear on this.  You're suggesting if, because even if we follow up to that point, I guess the question is in the Bowman case, there was tracing available because they put the, if you will, with the repayment of the debt into the Merrill Lynch account. Help me understand why if we still would move forward finding, as you suggested, the trustees can invade that, that if it's all contained within the marital trust, they can't separate that such that it's tracing available to the specific request. How does that negatively impact your client? So, the negative impact is really if what is being suggested, as I understand, by Attorney Cox is that this particular, the proceeds from the sale of any particular piece of property would be placed in a separate account. Placing the asset in that separate account may impact the co-trustee's ability to invest assets in such a way that the return on investment would be greater. For example, there are additional interest rates available if you do a CD of a certain value, right? As I combine assets, I increase their ability to make... So, the tracing issue could limit the ability to maximize the income. That is correct, Your Honor. Thank you. Additionally, there has been a suggestion in Mr. Cox's briefing that somehow the other beneficiaries, which include Mr. Alsman and Ms. Byers, are somehow not impacted in the same way as his client. And so, their position with respect to this trust matter is somehow not valued in the same way. But in fact, Mr. Alsman and Mrs. Byers are impacted in the very same way that Mrs. College is impacted. If a specific asset that is subject to a specific bequest to one of Mr. Alsman or Mrs. Byers is directed to be placed in a more income-producing asset, then they also are impacted by the trustee's ability to sell assets that are subject to a specific bequest and utilize those assets for the benefit of Mrs. Owen. They have reviewed the trust and determined that that is, in fact, what the trust provides, regardless of whether it ultimately could impact a specific bequest available to either of them. And Ms. Magler, I'm going to apologize, and I apologize to Mr. Boland as well. I did not realize that they had set his time for just his limited time. And so, I had indicated to him we're at the five-minute mark and then switched you, which means I'll leave it up to counsel if Mr. Boland would like his remaining five minutes of this time. And my apologies to the parties, but I do want to correct that error at this point. Your Honors, I am certainly happy to defer the balance of this time to Mr. Boland. Mr. Boland, my apologies. No problem. Ms. Magler is much smarter than me anyway, so thank you, Judge. Here's what I wanted to focus on with my remaining time. My opponent's argument is entirely based upon the Bollman case. So, let's spend some time distinguishing the case. Bollman doesn't apply. First, you can't even determine if it applies because we don't have the full trust language from Bollman. What we do have, and the only commonality that should exist between Bollman and this case, is in Bollman, this court was concerned with effectuating the settler's intention. That same concept applies here. We should effectuate the settler's intention. Here, we just have clear trust language that contemplates eventualities, divestiture through the application of the marital trust, and application of a residuary disbursement scheme in that event, which the settler planned and which the settler intended. The same is not true in Bollman. In Bollman, this court specifically found the settler of the decedent, and in his will and in the testamentary trust he settled, specifically did not contemplate that his business was going to go out of business. And that's what happened. And that is when this court stepped in and said, that wasn't considered. We want to give effect to his intent. Here, the court has the opportunity to say, here's the full language of the trust agreement. It provides for each one of these eventualities. Mr. Cox has not provided for a different path that follows the language of the trust agreement. And so here, the language of the trust agreement should be followed. And the court shouldn't reach to say, this is what we believe the settler's intention was for this condition that he didn't anticipate. All conditions are anticipated here. Second, Bollman dealt with an asset that was of the same type. It was a debt obligation. It was money or the equivalent of money. Here, we're dealing with specific real estate. So there's a difference when real estate is sold and converted into money versus when a debt obligation is just given its monetary equivalent. Third, in Bollman, as Mr. Cox said, he claims that the holding of is that the trustee's action cannot change what the settler intended to do. It can't act as an redemption. But in this case, the trustee's action of selling property for the benefit of Mrs. Owen is in fact acting at the settler's direction. And that is why Bollman doesn't apply. Because here, if property does not exist to fund a specific bequest, it's because the settler intended that to be the case so that Mrs. Owen would be provided for. I wanted to specifically address why segregating proceeds simply does not work. Number one, it's not in the trust language. There's nothing in the trust that suggests that once property is sold or a specific bequest is sold, that that should be treated differently for the reasons stated by Ms. Megley and the restrictions and the impediments to the other beneficiaries. But also, the trustees have no obligation nor are they required to do that according to the trust instrument. And secondarily, I think the In re Ficklin case is instructive of had the, and I know it's not persuasive, I know it is persuasive, but it's not binding on this court. But it's an example of had the settler, in this case, wanted to earmark sale proceeds from a specific bequest for a specific beneficiary, he could have done so. He did not do so. Instead, he established a residuary scheme that would be, if I may finish my thought, established a residuary scheme that would account for the funding and disbursement of that funding if an asset was sold during the trust. And that intention should be given effect. Thank you, Judge. Judges. Mr. Cox, you may proceed. I'm sorry, counsel, I believe you're muted. Well, there you go. Both my opposing counts are clearly smarter than I am. The I may please the court. I'd like to briefly address Ms. Megley's contention regarding a Q-tip trust. And as I believe your honors already suggested, the Q-tip trust is something as a creation of statute, partly to allow for the protection of a marital deduction within the trust. And I don't really want to spend too much time on it. I do think that it's important when you view the language in entirety and you look at the fact that that requirement under Section 7C2, or 4C2 that Ms. Megley's talking about, that Ms. Owen be able to direct the conversion of marital trust property is partially required by the tax code, does cast a different light on the intent of it because it's something you had to have, it had to be included there to protect a marital deduction. It's essentially a box that needed to be checked. Beyond that, and to Mr. Bowen's final point, when he spoke about the fact that the difference between Bowman and this court, he talked about the assets in the marital trust, he talked about a cash debt obligation which was converted to cash and how it's not the same thing as selling a piece of property, a real estate and converting it into cash. Fundamentally, there's nothing in the language that says we shouldn't treat those two things exactly the same way. In fact, as Mr. Bowen pointed out, Section 7F of this marital trust says that any asset which is sold becomes by definition principle of the trust. So, there is nothing in the language of the trust that would indicate that it should be treated differently or that the language or the holding of Bowman, the conversion of one asset to one form or another would somehow be different if you're dealing with real estate. That's simply not there. This court said in Bowman that where the testator has provided for a specific bequest on termination of the trust and the trust no longer possesses the property because of the trustee's actions, it cannot be because the testator intended to revoke the bequest from this court's opinion. So, when you apply that to this case, certainly there is an intention on the part of the grantor, Richard B. Owen, to provide for Ms. Owen for her life. With regards to the tracing problems that we've heard a lot of theoretical discussions with, I would respectfully disagree with my counsel on that. I think it's very, if you turn a piece of property into $500,000, it shouldn't be that hard. It should be within the trustee's fiduciary duty to be able to trace the fact that there's at least $500,000 in an account somewhere that should belong to the beneficiary pursuant to a specific bequest. Theoretically, I think the court can note that there are, they should already be doing this, is Mr. Alsman was given bank accounts as a specific bequest or funds held in a Grundy bank account. I believe that's in section D of the trust. Well, certainly financial accounts, but regardless, there is no purpose in trading. There is nothing in the court's ruling emboldenment suggests that we should treat the conversion of proceeds any differently. If an asset in the marital trust needs to be sold, it can be sold, and then it becomes principal under the marital trust. And if that asset was subject to a specific request, the trustees have the ability to invade the principal, if necessary, to the extent it's necessary, to provide for Mrs. Owen. And as the justices pointed out earlier, Justice Durham pointed out earlier, yes, the possibility does exist that all of that asset will be completely distributed. And if it is, then it's gone. But that is the only way in which that asset within the meaning of this trust cannot be deemed to still exist. That is the holding emboldenment, that when an asset is paid down, at least in part, if there's $1 left out of the initial $500,000, then that $1 is still subject to the specific bequest at the end of the trust. Where does it say that in the trust? It says that in the language of, I would suggest in the language of Section D, Your Honor, it talks about that if these assets still exist at the time of distribution of the grantor's wife's death, then they are to be distributed. Those assets still exist. They've been converted in form, but they still exist. And pursuant to this court's holding emboldenment, they still exist subject to that specific bequest. The only way they don't exist is to the extent that they have been paid down to provide for Mrs. Owen's care during her life. To do otherwise gives the trustees the power to convert a specific bequest into a contingent bequest and to virtually rule and hold arbitrarily the entire provision giving specific bequests null and insignificant and void. An Illinois trust does not allow that. Thank you, counsel. Your time has concluded. The court will take this matter under advisement and the court stands in recess.